*Interest not recoverable.*

---

PINE BLUFF WATER & LIGHT COMPANY *v.* CITY OF

PINE BLUFF.

Opinion delivered March 28, 1896.

CERTIORARI—SCOPE AT COMMON LAW.—The action of officers or public bodies, of a purely legislative, executive, or administrative nature, is not reviewable on certiorari at common law, although it involves the exercise of discretion; but it is not essential that the officers or bodies to whom it lies shall constitute a court, or that their proceedings should be strictly and technically "judicial," it being sufficient if they are *quasi* judicial.

SAME—SCOPE UNDER THE CODE.—The scope of the writ of certiorari at common law, which is limited to the review of judicial or *quasi* judicial proceedings, is not enlarged by Sand. & H. Dig., ·sec. 1125, authorizing circuit courts "to issue writs of certiorari to any officer or board of officers, or any inferior tribunal of their respective counties, to correct any erroneous or void proceeding, and to hear and determine the same."

SAME—VALIDITY OF CITY ORDINANCE.—An ordinance of a city requiring water companies and others desiring to take up the pavements of any street to deposit a certain sum before doing so, and to pay the city engineer for superintending the work, is purely legislative, and not reviewable on certiorari.

Appeal from Jefferson Circuit Court.

JOHM M. ELLIOTT, Judge.

The -Pine Bluff Water & Light Company filed a petition for certiorari to quash an ordinance of the city of Pine Bluff. The petition alleged that the plaintiff was, under an ordinance of January 17, 1887, granted a franchise to lay its mains in the city of Pine Bluff, with authority to repair and make connections of the same; that it is necessary to excavate the street for the purpose of making repairs and connections; that the company built its works under the franchise granted it by the city, and continued to make repairs and connections, excavating the streets as required, but that, on the 21st of November, 1891, the city, in violation of the plaintiff's franchise, passed an ordinance providing that, before making any excavation, the plaintiff should make a deposit with the city of $50 for each 50 linear feet, or fraction thereof, and that the replacing of the street should be done under the supervision of an engineer designated by the board of improvements, who should be paid 30 cents per hour by the party making the excavation; that this ordinance is wholly unnecessary, and imposes a heavy tax upon the plaintiff, in violation of its franchise; that it is unreasonable and oppressive. It therefore prays that the ordinance be brought up and quashed.

The city answered, denying that the ordinance was unreasonable, and alleging that it was a proper exercise of the city's police power.

The writ was refused, and the plaintiff filed a motion for a new trial, and appealed.

The provisions of the ordinance complained. of, so far as material to this inquiry, were as follows:

"Section 1. That any person who shall wilfully injure, destroy, dig up, remove, or displace the material of any paved street or alley, except in pursuance of a permit, as hereinafter provided, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined in any sum not exceeding $25.

"Sec. 2. Any licensed plumber or drain layer who shall desire to take up or displace any part of the pavement of any paved street or alley, for the purpose of making or repairing any plumbing work or laying any drain under the surface thereof, and any water or gas company having water or gas mains or pipes laid under such pavement by authority of any ordinance of this city, and who may desire to repair, renew, or alter the same, shall apply to the board of improvement of the district in which such pavement is situated for a permit to take up or displace the pavement, and shall deposit with said board the sum of $50 in lawful currency of the United States for each 50 linear feet of the proposed excavation, or fraction thereof, whereupon the board shall issue to the applicant a permit to make the proposed removal or excavation, the extent and location of which shall be fully described therein."

\*       \*       \*       \*       \*       \*       \*

Section 5 provides, in substance, that the work must be superintended by an engineer designated by the board of improvements, and be paid at the rate of 30 cents per hour by the person making the excavation.

"Sec. 6. When the work shall have been completed according to the preceding sections, the engineer shall certify the fact to the board of improvement after waiting a sufficient time for the work to settle, and thereupon they shall return to the person making the deposit the money deposited with them as aforesaid, provided that said board may withhold said money until all rubbish, waste and material shall have been removed from the street by the person doing the work in which the same was done."

*Wooldridge & Bridges* and *Rose, Hemingway & Rose*, for appellant.

1. *Certiorari* lies to quash a void city ordinance. It is true cases can be found which have asserted that *certiorari* will not lie except to quash a void *judicial* order or judgment, but an examination of the books shows that it has never been thus limited in actual practice. Bac. Abr. title, "Certiorari;" 8 Pick. 226; 1 Salk. 144; 1 Ld. Raym. 580; 2 Caines, 179; 16 Johns. 8; 7 Tenn. Rep. 363; 16 Johns. 49; 20 *id.* 209; 10 Mod. 159; 15 Barb. 471; 12 N. Y. 412; 26 N. J. L. 49; *id.* 445; 8 Abb. Pr. N. S. 277; 6 Cold. 421; 35 N. J. L. 200; 60 Me. 266; 50 Mo. 134; 47 Cal. 222; 36 Iowa, 9. In the following cases it was held to lie to correct abuses sought to be perpetrated by municipal councils. 2 Dill. Mun. Corp. sec. 926; 1 Met. 122; 2 *id.* 220; T. U. P. Charlt. 31; *id.* 43; 16 Ga. 172; 9 Barb. 542; 6 Wend. 565. The power to award certiorari, not only to inferior courts, but to persons invested by the legislature with power over the property and rights of others, for the purpose of supervising their proceedings, even in cases where they are authorized finally to hear and determine, is conceded in many cases. 20 Johns. 430; 27 Mich. 3; 88 Ill. 26; 41 Mich. 647; 10 Ill. App. 343; 53 N. W. 391; 41 Mich. 631; 15 N. Y. Sup. Ct. 56; 1 S. W. 32; 49 N.

J. L. 169; 6 Mackey, 148; 40 Wis. 221; 6 Ill. App. 70; 18 Atl. 1041; 83 Me. 541; 14 S. W. 515; 21 Atl. 412; 36 Ill. App. 90; 31 *id.* 378; 39 N. J. L. 489; 122 Mass. 290; 66 Me. 385; 55 Iowa, 215; 45 N. W. 30; 19 Atl. 332; 79 N. Y. 582; 52 Mich. 540; 42 Hun, 239; 44 *id.* 574; 80 Ala. 287; 28 Atl. 553; *id.* 578; 29 *id.* 163; 38 W. Va. 485; 77 Hun, 182; 27 N. Y. Sup. 881; 58 N. W. 1015; 25 N. Y. Sup. 322; *id.* 873; 138 Pa. St. 321; 21 Atl. 347; 55 N. W. 324; 27 Pac. 474; 19 D. C. R. 327; 13 Atl. 5; 37 N. W. 809; 23 Atl. 281; *id.* 284; 28 Pac. 416; 25 N. E. 995; 45 N. W. 899. This view has been sanctioned by the U. S. Supreme Court, 5 Wall. 413. See also Harris on Certiorari, sec. 17.

2. But our statute seems to settle the matter. Sand. & H. Dig., secs. 1125, 1127.

*Crawford & Hudson*, for appellee.

1. Certiorari did not lie at common law to quash a void city ordinance. Bac. Abr., "Certiorari." With one exception, the writ is confined to a review of a *judicial* nature. Harris, Certiorari, secs. 17, 273; 57 Iowa, 256; 2 Hill, 14; *id.* 9; 1 Beach, Pub. Corp. sec. 537; Throop, Pub. Off. secs. 533, 800, 802; 68 N. Y. 403, 409; 43 Barb. 232; 142 N. Y. 228; 25 N. E. 995, 997; 28 Atl. 347; 54 Wis. 150; 18 Nev. 438; 61 Wis. 494; 37 N. E. 240.

2. The *legislative* and *ministerial* acts of a city council are not, and the *judicial* acts are, reviewable on certiorari. 37 N. E. 240; 28 Atl. 578; 8 Pick. (Mass.), 218; 16 Johns. 49; 50 Mo. 134; 36 Ia. 9; 122 Mass. 290; 79 N. Y. 582; 28 Atl. 553; 29 *Id.* 163; 21 *id.* 367; 25 N. E. 895. The cases cited to support 2 Dill. on Mun. Corp. sec. 926 (except perhaps the New Jersey cases) are cases which hold that only judicial or quasi judicial matters are receivable on certiorari.

3. Sec. 1125, Sand. & H. Dig., does not extend the office of the writ.

Battle, J. Does the writ of *certiorari* lie to review the ordinance of the city of Pine Bluff which is in question in this proceeding?

At common law, the writ lies only to review the judicial action of inferior courts, or of public officers or bodies. When the action of the officers or public bodies is purely legislative, executive, and administrative, although it involves the exercise of discretion, it is not reviewable on *certiorari.* * But it is not essential that the officers or bodies to whom it lies shall constitute a court, or that their proceedings, to be reviewable by the writ, should be strictly and technically "judicial," in the sense that word is used when applied to courts. It is sufficient if they are what is termed "quasi judicial." It has been held that it lies to review the proceedings of officers and bodies, because they are quasi judicial, in the following cases: of supervisors, commissioners, and city councils in opening, widening, altering, or discontinuing public streets and highways (*Parks* v. *Boston*, 8 Pick. 226; *Tucker* v. *Rankin*, 15 Barb. 471); assessments for sewers or other improvements, (*Attorney General* v. *Northampton*, 143 Mass. 589); "of school trustees (*Miller* v. *Trustees*, 88 Ill. 26; *State* v. *Whitford*, 54 Wis. 150); of a town board in removing an assessor (*Merrick* v. *Arbela*, 41 Mich. 630); of a city council removing a city officer (*Mayor* v. *Shaw*, 16 Ga. 172; *People* v. *Nichols*, 79 N. Y. 582; *People* v. *Hayden*, 27 N. Y. Sup. 881); of a city council in grant-

<div style="margin-right:0">Scope of<br>certiorari at<br>common law.</div>

---

* *People* v. *Walter*, 68 N. Y. 403; *People* v. *Mayor*, 2 Hill, 9; *In re Mount Morris Square*, *id.* 14, *State* v. *Kemen*, 61 Wis. 494; *People* v· *Board*, 43 Barb. 232; *People* v. *Board Com'rs, etc., of New York.* 97 N. Y. 37; *People* v. *Board of Sup'rs of Queens County* (N. Y.), 30 N. E. Rep. 488; *Whittaker* v. *Venice* (Ill.), 37 N. E. Rep. 240; *Drainage Com'rs* v. *Giffin* (Ill.), 25 N. E. Rep. 995; *Esmeralda Co.* v. *District Court*, 18 Nev. 438; *People* v. *Martin*, 142 N. Y. 228; *State* v. *Board of Aldermen* (R. I.), 28 Atl. 347; 2 Dillon, Mun. Corp. (4 Ed.), sec. 927; 2 Spelling, Extraordinary Relief, sec. 1954.

ing a ferry license (*Ex parte* Fay, 15 Pick. 243); of a board of supervisors in ordering an election to re-locate a county seat (*Herrick* v. *Cerpenter*, 6 N. W. Rep. 574); of a board of supervisors in creating the office of clerk of said board, and raising certain salaries which had been fixed by statute (*Robinson* v. *Supervisors*, 16 Cal. 208); of proceedings of directors of a township directing their secretary not to certify a tax that had been voted (*Smith* v. *Powell*, 55 Iowa 215); of proceedings of commissioners in granting or refusing to grant a liquor license (*People* v. *Commissioners*, 25 N. Y. Sup. 322; *Dexter* v. *Town Council* (R. I.), 21 Atl. Rep. 347); and of proceedings of a board of equalization (*Orr* v. *State Board*, 28 Pac. Rep. 416). There are other proceedings of officers and public bodies which it lies to review, because they are quasi judicial, but those mentioned are sufficient to illustrate the rule.

Scope of the writ under the code.    But it is insisted that the ordinance before us is reviewable on *certiorari*, under section 1125 of Sand. & H. Dig. That section provides that circuit courts "shall have power to issue writs of *certiorari* to any officer or board of officers, or any inferior tribunal of their respective counties, to *correct any erroneous or void proceeding*, and to hear and determine the same." Literally construed, this section gives to circuit courts the power to correct, on *certiorari*, every erroneous act of any and all officers, board of officers, and inferior tribunals, and even to correct all their *void* acts. How this can be done is difficult to comprehend. It is evident it was not intended to be understood in that sense. How, then, can its meaning be determined except by aid of the common law? In *St. L., I. M. & S. Company* v. *Barnes*, 35 Ark. 99, this court held that it did not so enlarge the office of the writ "as to make it answer the ends of an appeal or writ of error, for the correction of mere errors in judicial proceedings." In that case the court confined

the writ to its office as defined by the common law. By what process of reasoning it can be limited in that respect, and not in others, I am unable to understand.

The "Code of Practice in Civil Cases" and its amendments, of which this statute is a part, were not intended as an amendment of the system of pleading and practice prevailing at the time of its adoption, but as a substitute for "any case provided for by" it "or inconsistent with its provisions." (Section 857). This being the object of it and its amendments, it is evident that so much of section 1125 of the Digest as we have quoted was not intended to amend the common law by enlarging the office of the writ, but, presumably knowing its office at common law, the legislature adopted it, and made it a part of the code, as it was of the common law pleading and practice, and thereby intended to authorize the circuit courts, by means of it, to review judicial and quasi judicial proceedings of officers, boards of officers, and inferior tribunals, and no other.

The ordinance under consideration is purely legislative, and is not reviewable on *certiorari*.

*Validity of city ordinance.*

The judgment of the circuit court denying the writ is affirmed.